**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| AMERICAN EFFICIENT LLC, *et al.*, | Case No. 26-30968 |
| Debtors.[1] | Related ECF No. 65 |

**STATEMENT BY THE UNITED STATES IN SUPPORT OF THE MOTION OF PJM INTERCONNECTION, L.L.C. AND PJM SETTLEMENT, INC. FOR ENTRY OF AN ORDER APPOINTING A CHAPTER 11 TRUSTEE, <u>OR IN THE ALTERNATIVE, AN EXAMINER</u>**

The United States Department of Justice, on behalf of the Federal Energy Regulatory Commission ("**<u>FERC</u>**"), hereby files the following statement in support of the Motion of PJM Interconnection, L.L.C. and PJM Settlement, Inc. for Entry of an Order Appointing a Chapter 11 Trustee, or in the Alternative, an Examiner (the "**<u>Trustee Motion</u>**") filed on August 11, 2026 [ECF No. 65] by PJM:[2]

1. FERC shares PJM's concerns that the Debtors' current management will not make impartial decisions on behalf of the bankruptcy estates in these cases. As debtors-in-possession, the Debtors are fiduciaries to their estates and "must act to benefit the[ir] estate[s] as a whole." *In re Microwave Products of America, Inc.,* 102 B.R. 666, 671 (Bankr. W.D. Tenn. 1989). The Debtors are forbidden from acting solely in their own interests or on behalf of any one particular group. *See In re Bellevue Place Assoc.*, 171 B.R. 615, 624 (Bankr. N.D. Ill. 1994). Here, the inherent conflicts

---

[1] The Debtors in these cases, along with each Debtor's case number, are: (i) American Efficient LLC, Case No. 26-30968; (ii) Affirmed Energy LLC, Case No. 26-30969; (iii) American Efficient Origination LLC, Case No. 26-30970; and (iv) Midcontinent Energy LLC, Case No. 26-30971.

[2] Capitalized terms not otherwise defined herein shall have the same meaning ascribed to them in the Trustee Motion.

between current management and the bankruptcy estates ensure that only the Debtors' insiders and related affiliates will benefit, necessitating the appointment of an independent trustee. *See In re EAZY-PZ, LLC*, No. 25-13720, 2026 WL 2245463, at *20 (Bankr. D. Colo. Aug. 4, 2026) (noting that "the existence of numerous conflicts of interest between management and the interest of the estate can be sufficient grounds to find cause to appoint a trustee") (citing to *In re SunCruz Casinos, LLC*, 298 B.R. 821, 830 (Bankr. S.D. Fla. 2003)).

2. A glaring example of such conflicting interests can be found in the Transaction Support Agreement ("TSA"), as amended, filed in support of the Debtors' request for financing. *See* ECF Nos. 35, 73. The Debtors, their parent companies, and other non-debtor affiliates (collectively, the "**Modern Companies**") have already agreed not to "commence any consenting matter, adversary proceeding, or other action, or seek discovery in connection with any such action, that seeks Incompatible Relief." TSA at § 5.2(d). The TSA defines "Incompatible Relief" to include actions that an impartial trustee might reasonably find appropriate, such as actions to: (i) transfer venue, (ii) convert or dismiss (iii) approve a settlement that deviates from the terms of the TSA,[3] (iv) lift the automatic stay, (v) avoid preferential and fraudulent transfers to insiders, or (vi) seek subordination of insider claims. *Id*. at § 1.1.[4] The terms of the TSA also prevent the Debtors

[3] Attached to the TSA are terms for any bankruptcy plan proposed by the Debtors, including treatment of certain classes of claims. Such terms call for the extinguishment without consideration of "any Allowed Claim held by, through or on behalf of any governmental unit or other regulator for a fine, penalty, forfeiture, or multiple, exemplary or punitive damages, to the extent not compensation for actual pecuniary loss suffered by the holder of such claim." *Id*. at App. A. In other words, the TSA requires that any plan provide that all Allowed Claims by FERC or any governmental unit be wiped out.

[4] Indeed, the Debtors also attempted—unsuccessfully—to grant priority liens to insider MIH on any proceeds recovered from potential avoidance actions, which could include transfers made by the Debtors to MIH. *See* Trustee Motion at ¶25.

from pursuing any kind of alter ego theories against their non-debtor affiliates and parent companies. *See id.*

3. Further, because the Debtors' Managing Director, Benjamin Abram, is also the Managing Director or President and CEO of the other Modern Companies, it is impossible to imagine that Mr. Abram and the rest of the current management will act for the benefit of any non-insider creditor. Mr. Abram has no incentive to pursue his other non-debtor companies and is a potential witness for both sides of any dispute between the estates and the other Modern Companies. This alone warrants the appointment of an independent trustee. *See In re McCorhill Pub., Inc.*, 73 B.R. 1013, 1017 (Bankr. S.D.N.Y. 1987) ("[W]here there are questionable inter-company financial transfers and the principals of the debtor occupy conflicting positions in the transferee companies, a trustee should be appointed in the best interests of creditors and all parties in interest in order to investigate the financial affairs of the debtor.").

4. As PJM notes, appointment of a trustee is particularly necessary in cases like these when there will be no creditors' committee and the only source of funding is from insiders subject to the same financial liabilities, i.e., the Penalties Order, as the Debtors. When considering whether to appoint a trustee, courts examine factors such as "(1) the trustworthiness of the debtor; (2) the debtor's past and present performance and prospects for rehabilitation; (3) whether the business community and creditors of the estate have confidence in the debtor; and (4) whether the benefits outweigh the costs." *In re LHC, LLC*, 497 B.R. 281, 293 (Bankr. N.D. Ill. 2013).

5. FERC—the largest and potentially only significant creditor of the estates—does not trust the Debtors or their business judgment and has no confidence in their ability to reorganize. *See generally,* Penalties Order. It is also undisputed that the Debtors (i) continue to be managed and

controlled by the same individuals who directed or authorized the conduct that resulted in FERC's issuance of the Penalties Order, (ii) are not currently operating any business, and (iii) have no reasonable prospect of resuming their former business model or creating a new, feasible business model anytime in the relevant future. As Debtors' counsel indicated at both the first- and second-day hearings, the sole purpose for the bankruptcy filing to allow the Debtors to continue their unsuccessful litigation against FERC and PJM.

6. Also notable, after repeatedly identifying themselves as a North Carolina company, the Debtors now proclaim their Delaware incorporation to justify venue in the Western District of North Carolina. Debtors arrive at this conclusion via a convoluted path: they assert that because they bank at Truist, which has no brick-and-mortar branches in Delaware, Truist's headquarters in Charlotte allows the filing of these bankruptcies in this District. Debtors make these assertions despite having opened their Truist accounts in the Middle District of North Carolina and admitting during the initial 341 meeting that the companies' monetary transfers route through Wilson, North Carolina in the Eastern District. This position, coupled with the representations regarding venue made in their petitions (before being amended), and the TSA not only shows a lack of judgment but a certain hubris we should expect if Debtors' current management is allowed to remain in control of the estates.

7. Thus, this Court should give no weight to any presumption that current management is "best suited to orchestrate the process of rehabilitation for the benefit of creditors and other interests of the estate." *In re Nartron Corp.*, 330 B.R. 573, 591 (Bankr. W.D. Mich. 2005) (rejecting the presumption that the debtor-in-possession's familiarity with the business makes it best suited to remain in control) (internal quotation marks and citation omitted). There is

no rehabilitation being, or that could be, proposed by the Debtors that would benefit the creditors.

8. Accordingly, for the reasons stated above and in the Trustee Motion, FERC supports the appointment of a chapter 11 trustee in these cases to ensure that the estates and creditors are properly protected.

Dated: September 15, 2026

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

*/s/ Mary A. Schmergel*
MARCUS S. SACKS
MARY A. SCHMERGEL
United States Department of Justice
Civil Division
P.O. Box 875
Ben Franklin Station
Washington D.C. 20044
Telephone: 202-305-5223
mary.schmergel@usdoj.gov

*Attorneys for the Federal Energy Regulatory Commission*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 15, 2026, a true and correct copy of the foregoing Statement By the United States in Support of the Motion of PJM Interconnection, L.L.C. and PJM Settlement, Inc. for Entry of an Order Appointing a Chapter 11 Trustee, or in the Alternative, an Examiner was served via electronic means through transmission facilities from the Court upon those parties authorized to participate and access the Electronic Filing System in the above-captioned case.

Dated: September 15, 2026

/s/ *Mary A. Schmergel*
Mary A. Schmergel