**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**

| | | |
|---|---|---|
| **In re:** | § | **Chapter 11** |
| | § | |
| **AMERICAN EFFICIENT LLC, *et al.*,** | § | **Case No. 26-30968** |
| | § | |
| **Debtors.** | § | **(Joint Administration)** |
| | § | |
| | § | |

**RESPONSE OF PJM INTERCONNECTION, L.L.C. AND PJM SETTLEMENT, INC. IN OPPOSITION TO DEBTORS' MOTION FOR SANCTIONS**

PJM Interconnection, L.L.C. ("**PJM Interconnection**") and PJM Settlement, Inc. ("**PJM Settlement**," and together with PJM Interconnection, "**PJM**"), by and through their undersigned counsel, hereby file this response in opposition to the *Debtors' Motion for Sanctions Against PJM Interconnection, L.L.C. and PJM Settlement, Inc. for Willful Violation of the Automatic Stay* (the "**Motion**"). In support of this response, PJM states as follows:

**PRELIMINARY STATEMENT**

1. The Motion should be denied, not only because it lacks merit, but also because it seeks to convert a disputed merits issue in a pending adversary proceeding into a truncated sanctions hearing. The Debtors' Motion presupposes that the postpetition accrued interest on the cash held by PJM is unquestionably property of the estate that PJM was obligated to turn over immediately to the Debtors upon demand. But that premise is disputed and is one of the subjects of a pending adversary proceeding that one of the Debtors, Affirmed Energy, filed against PJM. The Debtors themselves acknowledge as much: the Motion expressly states that the alleged prepetition and postpetition transfers of interest are already the subject of the pending Adversary Proceeding. *See* Motion ¶¶ 2, 10. Simply put, the Debtors disagree with PJM (and FERC) on PJM's right, pursuant to its governing tariff, to continue to hold its collateral to secure against the

significant credit risk presented by Affirmed Energy, and the Debtors disagree with PJM on the impact, if any, of bankruptcy on PJM's right to continue to hold that collateral.

2. In stark contrast to the circumstances in the cases on which Affirmed Energy relies for its Motion, PJM is not a creditor flouting bankruptcy law by pursuing extra-judicial collection remedies postpetition. PJM seeks only to maintain the status quo with respect to the collateral it continues to hold under the credit and settlement provisions of its governing tariff. Before these chapter 11 cases were filed, Affirmed Energy challenged PJM's retention of that collateral before FERC and lost. FERC determined that PJM reasonably concluded the collateral was "Restricted Collateral" under the tariff and that PJM was entitled to continue holding it in light of the significant credit risks presented.

3. The Motion improperly assumes what it must first establish: that the Debtors have a present possessory right to immediate turnover of the disputed funds. As PJM has explained in its Motion to Dismiss the Adversary Proceeding filed against it by Affirmed Energy, the Debtors' turnover theory fails because the Complaint does not allege a present right to possession and does not allege facts sufficient to compel turnover under section 542, including a plausible basis to provide adequate protection to PJM if the funds were released to the Debtors to use in these cases. *See* Motion to Dismiss ¶¶ 43–57, *Affirmed Energy LLC v. PJM Interconnection, L.L.C.*, Adv. Pro. No. 26-03055, ECF No. 4 (Bankr. W.D.N.C. Aug. 28, 2026) (the "**Motion to Dismiss**", filed in the "**Adversary Proceeding**"). The Debtors should not be permitted to seek, through a sanctions motion, the functional equivalent of turnover relief and "damages" measured by the same disputed funds, the accrued postpetition interest, that they seek to recover in the Adversary Proceeding.

4. The automatic stay does not transform every refusal to release disputed funds into a willful stay violation. The Supreme Court has held that a temporary refusal to pay disputed funds

does not, without more, violate sections 362(a)(3) or 362(a)(6). *See Citizens Bank of Maryland v. Strumpf*, 516 U.S. 16, 19–21 (1995). The Supreme Court has further held that mere retention of disputed property does not violate section 362(a)(3). *See City of Chicago v. Fulton*, 592 U.S. 154, 158–62 (2021).

5. At most, the Motion describes PJM's maintenance of the status quo with respect to disputed funds and PJM's communication, through counsel, of its legal position that such funds remain subject to PJM's rights, including its control over the escrowed funds. That is not sanctionable conduct.

## RELEVANT BACKGROUND

6. Prior to the Petition Date, Affirmed Energy LLC ("**Affirmed Energy**") deposited cash with PJM Settlement, which PJM Settlement has held in an interest-bearing escrow account at PNC as collateral for Affirmed Energy's performance of its obligations in the PJM capacity markets (the "**Collateral**"). The treatment of that account and interest that accrues on that account arises under the applicable tariff governing participation in the PJM capacity markets, including the tariff's credit and settlement provisions.

7. Long prior to the Petition Date, Affirmed Energy demanded that PJM turn over the Collateral it was holding, including accrued interest. When PJM refused to do so, Affirmed Energy sought relief from FERC to compel the Defendants to release the Collateral. Complaint at ¶54. Affirmed Energy, however, lost that fight. Complaint at ¶ 58; *see also* Compl. ¶ 54, *Affirmed Energy LLC v. PJM Interconnection, L.L.C.*, Docket No. EL24-124-000 (F.E.R.C. filed July 5, 2024) (the "**FERC Complaint**")). FERC determined that PJM had reasonably concluded, for at least six separate reasons, that the Collateral was "Restricted Collateral" under PJM's tariff and that retention of the Collateral was necessary to protect against Affirmed Energy's significant

credit risks, including its potential liabilities resulting from enforcement proceedings then pending against Affirmed Energy and affiliates before FERC. *See Affirmed Energy, LLC v. PJM Interconnection, L.L.C.*, 195 FERC ¶ 61,044 at 16–22, Docket No. EL24-124-000 (April 15, 2026).

8. Affirmed Energy also lost reconsideration of that decision at FERC, arguing on rehearing that PJM should not be allowed to hold the entirety of its Collateral while the Penalties Order issued in the FERC enforcement proceedings was not yet enforceable by FERC. *See Affirmed Energy, LLC v. PJM Interconnection, L.L.C.*, 195 FERC ¶ 61,199, Docket No. EL24-124-001 (June 12, 2026) (the "**Collateral Order**"). Affirmed Energy did not timely appeal FERC's decision that PJM was entitled to continue to hold the entirety of the Collateral, including the interest accruing on the cash deposit that comprises part of the Collateral.[1]

9. On July 18, 2026, the Debtors commenced these chapter 11 cases.

10. Affirmed Energy thereafter commenced the Adversary Proceeding against PJM challenging, among other things, PJM continuing to hold in escrow the accruing interest and seeking turnover of the accrued interest to date, among other requested relief. PJM filed its Motion to Dismiss the Adversary Proceeding on August 28, 2026.

11. As set forth in the Motion to Dismiss, the Debtors' turnover theory fails because the Complaint does not establish a present possessory right to the disputed funds, alleges at most a contingent reversionary interest in restricted collateral, and does not plead facts sufficient to

[1] As FERC pointed out in denying Affirmed Energy's reconsideration motion, "PJM's tariff defines Collateral as 'a cash deposit, including any interest thereon, or a Letter of Credit issued for the benefit of PJM or PJMSettlement, in an amount and form determined by and acceptable to PJM or PJMSettlement, provided by a Participant to PJM or PJMSettlement as credit support in order to participate in the PJM Markets or take Transmission Service.' PJM, Intra-PJM Tariffs, C-D, OATT Definitions – C-D (40.1.1)." 195 FERC ¶ 61,199, at n.2.

show that the Debtors could adequately protect PJM's interests in the funds if they were released to the Debtors for their use. *See* Motion to Dismiss ¶¶ 43–57.

12. The Motion raises the same core dispute as the Adversary Proceeding. Specifically, the Debtors contend in the Motion that accrued interest reflected on an August 3, 2026 eCredit statement had to be remitted immediately to Affirmed Energy, while PJM maintains that the accrued interest remains subject to PJM's possession rights under the governing tariff and applicable credit framework. Indeed, the Debtors admit in the Motion that these same alleged transfers of interest are the subject of the Adversary Proceeding. *See* Motion ¶¶ 2, 10. The Adversary Proceeding asserts the same basic theory: that PJM wrongfully retained interest that accrued in the same interest-bearing escrow account during July 2026.

## ARGUMENT

### I. THE MOTION IMPROPERLY SEEKS TO CIRCUMVENT THE ADVERSARY PROCEEDING AND OBTAIN A LITIGATION ADVANTAGE

13. The Motion improperly seeks to use a sanctions motion to circumvent the Adversary Proceeding and obtain a litigation advantage with respect to issues already being adjudicated in the Adversary Proceeding.

14. As noted above, this is not the first forum in which Affirmed Energy has sought release of the disputed funds. Before these chapter 11 cases were filed, Affirmed Energy challenged PJM's retention of the Collateral before FERC and argued that PJM was required under Attachment Q, section V of the tariff to return the Collateral upon request. *See* FERC Complaint at 2 & n.2, 7–8. FERC rejected that challenge and held that PJM had reasonably concluded that the Collateral was "Restricted Collateral" under the tariff and could continue to hold all of it in light of the credit risks presented. *See Affirmed Energy, LLC v. PJM Interconnection, L.L.C.*, 195 FERC ¶ 61,044 at PP 31–38 (2026), reh'g granted in part and denied in part, 195 FERC ¶¶ 61,199

(2026). Affirmed Energy did not like that result but chose to bring the dispute to this Court rather than timely appeal that determination.

15. In the Adversary Proceeding, the Debtors seek, among other relief, turnover of disputed funds, including the same accrued postpetition interest that is the subject of the Motion.

16. The Motion's theory depends on the proposition that the Debtors are presently entitled to immediate possession of the disputed accrued interest and that PJM's refusal to release those funds is wrongful. Those are core merits issues in the Adversary Proceeding. Further, the Motion seeks "damages" measured, in part, by the accrued postpetition interest, some of the same disputed funds the Debtors seek to recover through turnover and related claims in the Adversary Proceeding. In substance, the Debtors seek the functional equivalent of turnover relief here, without litigating the statutory and factual predicates for such relief.

17. The Debtors should not be permitted to use a sanctions motion to circumvent the Adversary Proceeding or deprive PJM of its right to litigate those issues fully. Before sanctions could be considered, the Court would first have to resolve threshold legal disputes concerning the escrowed funds, the parties' respective rights in the accrued interest, the effect of the credit and settlement framework in the governing tariff, whether the Debtors have any present possessory right to compel turnover at all, and whether the Debtors can prove they can adequately protect PJM in the Debtors' use of those funds.

18. Those are merits issues. A sanctions motion is not a proper vehicle to short-circuit that adjudication or to secure an expedited ruling that would materially affect the merits of the Adversary Proceeding. For that reason alone, the Motion should be denied, or at minimum deferred unless and until the underlying merits issues are resolved.

## II. THE DISPUTED TURNOVER AND PROPERTY-RIGHTS ISSUES DO NOT SUPPORT SANCTIONS

19. The Motion rests on the premise that the disputed accrued interest was property of the estate that PJM was required to turn over immediately. That premise is disputed.

20. That dispute turns in substantial part on the parties' respective rights under the governing tariff and incorporated credit and settlement provisions. As PJM explained in the Motion to Dismiss, the challenged funds are held within an existing collateral arrangement, and the Debtors have alleged, at most, a contingent reversionary interest in restricted collateral held by PJM Settlement. *See* Motion to Dismiss ¶¶ 2–3, 16, 43–49.

21. The Debtors rely principally on Attachment Q, section V stating that "[i]nterest on a cash deposit shall accrue to the benefit of the Participant," but that assertion does not resolve the dispute presented here. In the FERC litigation, Affirmed Energy relied on the same tariff section, Attachment Q, section V, to argue that PJM was required to return the Collateral once it was no longer required and once Affirmed Energy requested its release. *See* Compl. at 2 & n.2, 7–8, *Affirmed Energy LLC v. PJM Interconnection, L.L.C.*, Docket No. EL24-124-000 (F.E.R.C. filed July 5, 2024). FERC rejected that broader tariff theory and held that PJM could continue to hold the funds as Restricted Collateral under the tariff's credit framework until PJM determined that the relevant risk had subsided or been resolved. *See Affirmed Energy, LLC v. PJM Interconnection, L.L.C.*, 195 F.E.R.C. ¶ 61,044, at PP 31–32, 37–40 (2026); Collateral Order, 195 F.E.R.C. ¶¶ 61,199, at PP 5, 12, 17, 24–25. Affirmed Energy's proposed interpretation of the tariff is, at best, a disputed issue Affirmed Energy is trying to re-litigate in the Adversary Proceeding. At present, the Debtors have not prevailed on their view that interest cannot be held by PJM under the applicable tariff provisions.

22. The Motion also mischaracterizes PJM's position by suggesting that PJM is withholding disputed funds in order to enforce a FERC administrative order. That is incorrect. PJM is not attempting through the conduct challenged in the Motion to execute on, collect upon, or otherwise enforce the FERC Penalties Order. PJM's position is instead that, under the governing tariff's collateral framework, the disputed funds remain subject to PJM's rights under the tariff's credit requirements pending resolution of the parties' dispute.

23. The Debtors themselves describe the disputed funds as being held in an "interest-bearing escrow account" at PNC. *See* Motion ¶ 2 (emphasis added). That admission matters. Funds held in an escrow or restricted collateral account are not the equivalent of cash in the Debtors' own unrestricted possession and control that are also subject to a lien.

24. Courts addressing escrowed or restricted funds consistently distinguish between a contingent interest and a present right to compel possession or turnover. *See Matter of O.P.M. Leasing Servs., Inc.*, 46 B.R. 661, 667–70 (Bankr. S.D.N.Y. 1985) (holding that, once funds were placed into escrow, the debtor retained only a contingent interest, not an immediate possessory right); *Matter of Newcomb*, 744 F.2d 621, 623–27 (8th Cir. 1984) (same); *In re Royal Bus. Sch., Inc.*, 157 B.R. 932, 941–42 (Bankr. E.D.N.Y. 1993) (holding that a debtor with only a contingent interest in escrowed funds had no present right to compel turnover).

25. The Motion further fails because it presumes that the Debtors have a present possessory right entitling them to immediate turnover of the disputed funds. But, as PJM argues in seeking dismissal of Counts Four and Five of the Complaint, section 542 does not create new substantive rights; it requires turnover only where the estate has a presently enforceable right to possession or use. *See* Motion to Dismiss ¶¶ 43–45 (citing *In re Creative Data Forms, Inc.*, 41 B.R. 334, 336–37 (Bankr. E.D. Pa. 1984)).

26. For the same reasons that Counts Four and Five of the Complaint fail, the Motion fails here. The Complaint does not plausibly allege, and the Motion does not establish, that Affirmed Energy possessed or controlled the account, had an unconditional right to withdraw the disputed funds, or held anything more than a contingent reversionary interest in restricted collateral pending resolution of its obligations. *See* Motion to Dismiss ¶¶ 46–49, 52–57.

27. If the Debtors contend they are entitled to immediate possession of the disputed funds, the proper course is to seek and obtain turnover relief under section 542 and satisfy the statutory requirements for such relief, including section 363(e). The Debtors have not obtained any turnover order requiring release of the disputed funds, and they should not be permitted to use a sanctions motion to obtain the functional equivalent of turnover relief without meeting those requirements.

28. The Motion appears to be an attempt by the Debtors' to bypass the framework that would ordinarily govern any request to compel release of the disputed funds for present use. As PJM explained in the Motion to Dismiss, even if the disputed funds could be subject to turnover in some circumstances, the Debtors have not alleged any basis on which PJM's interest could be adequately protected if the funds were released for use. *See* Motion to Dismiss ¶¶ 50–51, 57. The Complaint itself alleges that Affirmed Energy is no longer operating and seeks access to the funds to support litigation and pay claims, not to preserve an ongoing income-producing business. *See id.* ¶¶ 50–51. The Debtors should not be permitted to avoid their burden of establishing adequate protection by recasting their dispute as a motion for sanctions and relabeling the disputed funds as "damages."

29. Because the parties' respective rights in the disputed funds are contested, and because the Debtors have not established a present possessory right to force immediate turnover

or a basis to provide adequate protection for the Debtor's intended dissipation of those funds, the Debtors' turnover theory does not establish misconduct, much less a willful violation of the automatic stay warranting sanctions.

## III. PJM DID NOT VIOLATE THE AUTOMATIC STAY

30. Even apart from the disputed turnover issues, the Motion does not establish a violation of sections 362(a)(3) or 362(a)(6).

31. The Debtors principally invoke section 362(a)(3), asserting that PJM exercised control over estate property by refusing to release the disputed funds. That theory is foreclosed by both *Citizens Bank of Maryland v. Strumpf*, 516 U.S. 16, 19–21 (1995), and *City of Chicago v. Fulton*, 592 U.S. 154, 158–62 (2021).

*32.* In *Citizens Bank of Maryland v. Strumpf*, the Supreme Court held that a bank's temporary refusal to pay funds while it sought adjudication of its rights was "neither a taking of possession of respondent's property nor an exercising of control over it," but rather "merely a refusal to perform its promise." 516 U.S. 16, 21 (1995). The Court further held that such conduct did not violate section 362(a)(3). *Id.*

33. In *City of Chicago v. Fulton*, the Supreme Court likewise held that mere retention of property does not violate section 362(a)(3), explaining that section 362(a)(3) proscribes affirmative acts that would disturb the status quo, while turnover issues are addressed, if at all, under section 542 and through merits litigation. 592 U.S. 154, 158–62 (2021).

34. The same principles apply here. The Motion does not identify any postpetition seizure, repossession, or other affirmative act by PJM to obtain possession of property beyond that which PJM already held or administered pursuant to the parties' prepetition framework.

35. Rather, the Motion alleges that PJM reflected balances on a periodic statement and declined the Debtors' request that disputed funds be released. Under *Strumpf* and *Fulton*, those allegations are insufficient to establish a violation of section 362(a)(3).

36. The Debtors' characterization of PJM's conduct as a postpetition "taking" does not alter that conclusion. To the extent the Debtors dispute PJM's treatment of accrued interest, that dispute presents a merits issue to be resolved in the Adversary Proceeding; it does not establish a violation of the automatic stay.

37. The Motion likewise fails to establish a violation of section 362(a)(6). In *Strumpf*, the Supreme Court likewise rejected the contention that a temporary refusal to pay disputed funds constituted a prohibited act to collect under section 362(a)(6). 516 U.S. 16, 21 (1995). The Fourth Circuit likewise has recognized that communications or conduct that are informational in nature, rather than efforts to compel payment, do not violate the stay. *See Palazzo v. Bayview Loan Servicing*, LLC, 173 F.4th 51, 63–64 (4th Cir. 2026) (holding that monthly statements, payoff statements, and tax documents that were purely informational in nature did not violate the automatic stay). PJM's conduct here is, at most, analogous: the Motion alleges that PJM reflected balances on a statement and maintained its legal position regarding disputed funds.

38. PJM did not send collection demands, commence litigation, threaten termination in order to compel payment, foreclose on collateral, or otherwise engage in coercive collection activity directed to the Debtors.

39. Rather, the Motion alleges only that PJM maintained the account treatment required by its understanding of the governing framework and declined the Debtors' request, made counsel-to-counsel, through a letter in which the Debtors contended that bankruptcy law required

that it release the accrued interest.[2] Such conduct does not constitute an "act to collect" a prepetition claim within the meaning of section 362(a)(6).

40. The authorities on which the Debtors rely are materially distinguishable both in the propositions for which they are cited and in their underlying facts. The Debtors cite *In re Lyle* for the proposition that a creditor's postpetition invoice demanding payment of a prepetition debt violated the automatic stay. *See In re Lyle*, 662 B.R. 229, 234–35 (Bankr. E.D.N.C. 2024). *Lyle*, however, involved repeated postpetition invoices sent to collect a prepetition repair debt, and the court emphasized the continued mailing of those invoices as the stay violation. *Id.* at 233–35.

41. The Debtors also cite *In re Johnson* for the proposition that postpetition payment demands and an attempted foreclosure violated the stay. *See In re Johnson*, No. 15-50053, 2016 WL 659020, at *3–5 (Bankr. W.D.N.C. Feb. 17, 2016). But *Johnson* involved repeated collection calls over a period of months, delinquency letters, home visits, and the commencement of a foreclosure proceeding. *Id.* at *1–5. This matter is materially different from those cases. It concerns a dispute regarding the proper status of funds within an existing collateral arrangement and PJM's refusal, through counsel, to release disputed funds immediately, not repeated postpetition collection demands, foreclosure activity, or self-help repossession.

42. For all of these reasons, the Motion does not establish a stay violation.

## IV. ANY ALLEGED VIOLATION WAS NOT WILLFUL

43. Even if the Court were to conclude that the stay is implicated, the Debtors nevertheless would not be entitled to sanctions because PJM had, at minimum, an objectively reasonable basis for its position.

[2] When PJM's counsel requested any authority the Debtors had to support its position that PJM's continued accrual of interest in the escrow account was a stay violation, *see* Motion at Exhibit D, none was provided by Debtors' counsel before filing the Motion.

44. The Debtors place substantial weight on the fact that PJM knew about the bankruptcy filings and intentionally declined to release the disputed funds. But knowledge of a bankruptcy filing does not make every disputed postpetition action sanctionable.

45. Here, there is a bona fide dispute concerning the parties' rights in the accrued interest. PJM acted openly, through counsel, and based on its understanding of the governing tariff, account structure, and applicable regulatory framework.

46. PJM did not conceal its conduct, ignore a court order, or engage in self-help outside the parties' existing framework. PJM maintained a legal position concerning disputed funds. That is not the kind of egregious or plainly unlawful conduct that warrants sanctions.

47. Sanctions are inappropriate where there is a "fair ground of doubt" as to whether the challenged conduct was prohibited. *Taggart v. Lorenzen*, 587 U.S. 554, 560–61 (2019). At a minimum, there is a reasonable basis to doubt whether the Debtors were entitled to immediate turnover of the disputed funds. That forecloses the relief requested in the Motion. *Strumpf*, 516 U.S. at 19–21; *Fulton*, 592 U.S. at 158–62.

## CONCLUSION AND RESERVATION OF RIGHTS

48. Accordingly, PJM respectfully requests that the Court deny the Motion in its entirety.

49. In the alternative, if the Court concludes that further proceedings are necessary, PJM respectfully requests that the Court defer any determination regarding sanctions unless and until the threshold merits issues concerning the disputed funds are resolved in the Adversary Proceeding.

50. PJM expressly reserves all rights to amend, modify, or supplement this response and to raise any additional arguments at any hearing concerning the Motion.

Dated: September 15, 2026
Charlotte, North Carolina

*/s/ Kathleen E. Perkins*
Kathleen E. Perkins (NC Bar No. 52340)
**HUNTON ANDREWS KURTH LLP**
101 South Tryon Street, Suite 3500
Charlotte, NC 28280
Telephone: (704) 378-4713
Facsimile: (704) 378-4890
E-mail: kperkins@hunton.com

– and –

Tyler P. Brown (VSB No. 28072) (admitted *pro hac vice*)
Jennifer E. Wuebker (VSB No. 91184) (admitted *pro hac vice*)
Olivia C. Maier (VSB No. 100705) (admitted *pro hac vice*)
**HUNTON ANDREWS KURTH LLP**
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, Virginia 23219
Telephone: (804) 788-8200
Facsimile: (804) 788-8218
Email: tpbrown@HuntonAK.com
jwuebker@HuntonAK.com
lmaier@HuntonAK.com

## CERTIFICATE OF SERVICE

I certify that on September 15, 2026, I caused a true and correct copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Western District of North Carolina on those parties registered to receive electronic notices.

Dated: September 15, 2026

*/s/ Kathleen E. Perkins*
Kathleen E. Perkins