**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**

| | |
|---|---|
| IN RE: | Case No. 26-30968 |
| AMERICAN EFFICIENT LLC, *et al.*,[1] | Chapter 11 |
| Debtors. | (Jointly Administered) |

**DEBTORS' RESPONSE TO MOTION OF BANKRUPTCY**
**ADMINISTRATOR TO TRANSFER VENUE OF BANKRUPTCY CASES**

American Efficient LLC ("**American Efficient**"), American Efficient Origination LLC ("**American Efficient Origination**"), Affirmed Energy LLC ("**Affirmed**"), and Midcontinent Energy LLC ("**Midcontinent Energy**") (collectively, the "**Debtors**"), respond to the *Motion of Bankruptcy Administrator to Transfer Venue of Bankruptcy Cases* [Dkt. 128] (the "**BA Motion**"), the *Response of PJM Interconnection, L.L.C. and PJM Settlement, Inc.* (together, "**PJM**") [Dkt. 139] (the "**PJM Response**"), the *Reply in Support of Motion to Transfer Venue and in Opposition to Motion to Dismiss these Cases* (the "**BA Reply**") [Dkt. 147], and the *Statement by the United States in Support of the Motion of Bankruptcy Administrator to Transfer Venue of Bankruptcy Cases* [Dkt. 151] (the "**FERC Statement**"), and state as follows:[2]

**Preliminary Statement**

1. Nearly three months into these cases, with interim financing in place, contested matters heard, and an adversary proceeding underway, the Bankruptcy Administrator asks the Court to find that venue in this District is improper and to unwind the Debtors' choice of this

[1] The Debtors in these cases, along with each Debtor's case number, are: (i) American Efficient LLC, Case No. 26-30968; (ii) Affirmed Energy LLC, Case No. 26-30969; (iii) American Efficient Origination LLC, Case No. 26-30970; and (iv) Midcontinent Energy LLC, Case No. 26-30971.

[2] Capitalized terms not defined herein shall have the meanings given to them in the BA Motion.

District, one of several permissible venues, for their chapter 11 cases. PJM quickly piled on, bootstrapping its motion to dismiss—an obvious litigation tactic—to the BA Motion. But the location of the Debtors' principal assets makes this District an appropriate venue, and the Bankruptcy Administrator cannot carry her burden to prove otherwise.

2. 28 U.S.C. § 1408(1) provides multiple independent bases for venue, any one of which suffices. Specifically, venue is appropriate in the district "in which the domicile, residence, principal place of business in the United States, or principal assets in the United States" have been located for the relevant 180-day period. 28 U.S.C. § 1408(1). "A debtor's choice of forum is presumed to be 'a proper district for venue purposes and the party challenging a debtor's choice must show by a preponderance of the evidence that the venue is improper.'" *In re Grayson O Co.*, Case No. 23-50124, 2023 WL 4876240 at *3 (Bankr. W.D.N.C. July 21, 2023), quoting *In re Mid Atl. Retail Grp., Inc.*, Case No. 07-81745, 2008 WL 612287 at *2 (Bankr. M.D.N.C. Jan. 4, 2008).

3. Here, each of the Debtors' corporate bank accounts in which they maintain principal assets, and through which their receipts and disbursements flow, is with Truist Financial Corporation ("**Truist**"), which is headquartered in Charlotte. These accounts are essential to the Debtors—they could not maintain their businesses without them. (Declaration of Tayler Dalpe ("**Dalpe Decl**."), attached hereto as Exhibit A, ¶7.) And, because the Debtors are affiliates, if this Court finds that venue for any single Debtor is proper in this District under 28 U.S.C. § 1408(1), venue is proper for the other Debtors under 28 U.S.C. § 1408(2). The fact that all four Debtors could have also filed in Delaware, where they are domiciled, or in the Middle District of North Carolina, where they maintain an office address, does not make this District improper. Thus, while the Western District of North Carolina is not the *only* venue in which the Debtors could have filed, it is a proper venue under 28 U.S.C. § 1408(1) and (2).

4. Because venue is proper in this District, PJM's argument that the chapter 11 cases should be dismissed pursuant to 28 U.S.C. § 1406(a) fails, which leaves only one question before the Court: whether the Court should transfer venue pursuant to 28 U.S.C. § 1412 to another district in the "interest of justice" or "for the convenience of the parties." 28 U.S.C. § 1412. As this Court explained in *Bestwall*, a debtor's choice of venue, if proper, should "be accorded substantial weight and deference." *In re Bestwall*, 605 B.R. 43, 51 (Bankr. W.D.N.C. 2019) (internal quotation omitted). Here, the relevant factors favor keeping the cases where they are. Most significantly, transfer would undermine the economic and efficient administration of these estates. The cases are more than three months old, financing is in place, contested matters have been heard, the Court is already familiar with the parties and the issues, and the Bankruptcy Administrator herself acknowledges that transfer would be a "cumbersome disruption of the chapter 11 process." (BA Motion, ¶31.)

5. Alternatively, and without waiving the foregoing, if the Court decides to transfer the cases pursuant to 28 U.S.C. § 1412, the Debtors request that the Court transfer venue to the District of Delaware. Delaware is the state of organization of every Debtor, and the Bankruptcy Administrator agrees that venue would be proper there. (BA Motion, ¶17.) And while it is correct that the Debtors' filings list a Durham address as the "principal place of business," the Debtors do not have employees or operate out of a physical office in Durham. Ms. Dalpe, the Debtors' primary witness, resides and works in the Eastern District of North Carolina, and other employees of the Debtors' affiliates who support the Debtors are similarly geographically diverse, so the individuals who direct the business are not concentrated in a single district. (Dalpe Decl. ¶5.) The other reasons offered for the Middle District—an enforcement action that has not been filed and a judge's familiarity with a stayed case that addressed constitutional issues that are no longer relevant to the

dispute between FERC and the Debtors—are not grounds for transfer. Delaware is also convenient for those who must travel. The principal adverse parties are in Pennsylvania and Washington, D.C., and the Debtors' co-bankruptcy counsel is in Chicago.

6. Accordingly, the Debtors respectfully request that the Court: (a) hold that venue is proper in this District under 28 U.S.C. § 1408, (b) deny PJM's request for dismissal, and (c) either deny the BA Motion's request for transfer or transfer the chapter 11 cases to the District of Delaware.

## Factual Background

### I. The Debtors' Business.

7. Each Debtor is a Delaware limited liability company. (BA Motion, ¶4 & Exs. A, C, E, F, H.) The Debtors are affiliated entities. (Dalpe Decl. ¶3.)

8. Beginning in 2014, Debtor Affirmed participated in the PJM capacity markets as a provider of energy efficient resources in accordance with PJM's Open Access Transmission Tariff (the "**Tariff**"). In 2024, PJM revised the Tariff to eliminate the participation of energy efficient resources like Affirmed, and FERC approved this revision over Affirmed's objection. As a result of this change, Affirmed's participation in the PJM capacity markets ended in May 2026. Affirmed challenged the revision to the Tariff in federal court and currently has a petition for certiorari pending before the Supreme Court.

9. The Debtors do not have any employees. (Dalpe Decl. ¶4.) The Debtors' day-to-day work is done by employees of non-debtor affiliates who primarily work remotely from various locations, including the Eastern District of North Carolina, the Western District of North Carolina, and the Middle District of North Carolina. (*Id.*) The Debtors maintain a business address at an office space in Durham, North Carolina that is leased by a non-debtor affiliate. (*Id.*) The Debtors are not parties to that lease. (*Id.*)

10. Ms. Dalpe is the Chief Accounting Officer of the Debtors' parent, Modern Energy Group LLC ("**Modern Energy**"). (Dalpe Decl. ¶1.) Ms. Dalpe's duties and responsibilities include being responsible for the day-to-day accounting and finances of the Debtors. (*Id.*) Ms. Dalpe resides in Wake County, which is in the Eastern District of North Carolina. (*Id.* ¶5.) Ms. Dalpe primarily works remotely. (*Id.*) She estimates she has been in the physical office space in Durham, North Carolina, less than 10 times in the past year. (*Id.*)

## II. The Debtors' Principal Assets.

11. Each of the Debtors maintains bank accounts with Truist, a bank headquartered in Charlotte, North Carolina. (Dalpe Decl. ¶6.) The Truist accounts include operating cash accounts and interest-bearing money market accounts. (*Id.*) A chart with the Truist account details for each Debtor, the date the account was opened, and the balance as of the Petition Date is below:

| Debtor | Account Type | Date Opened | Last Four Digits | Balance |
|---|---|---|---|---|
| American Efficient LLC | Money Market | 10/23/24 | 1133 | $12,162.69 |
| American Efficient LLC | Checking | 09/25/23 | 6437 | $40,179.05 |
| American Efficient LLC | Checking | 06/13/24 | 8666 | $100.00 |
| Affirmed Energy LLC | Money Market | 09/25/23 | 6542 | $1,959.00 |
| Affirmed Energy LLC | Checking | 09/25/23 | 6534 | $21,444.00 |
| American Efficient Origination LLC | Checking | 09/25/23 | 6453 | $11,553.00 |
| Midcontinent Energy LLC | Checking | 09/25/23 | 6127 | $52.00 |

(*Id.*)

12. The Truist accounts are the Debtors' only bank accounts. (Dalpe Decl. ¶7.) All of the Debtors' receipts and disbursements flow through the Truist accounts. (*Id.*) The Truist accounts are essential to the Debtors' businesses. (*Id.*) The Debtors could not function without the Truist

accounts. (*Id.*) The wire instructions for all of the Debtors' Truist accounts list the Truist address for wires into the account as located in Charlotte, North Carolina. (*Id.* Ex. 1.)

13. Ms. Dalpe opened the Debtors' Truist accounts while working remotely in 2023 and 2024. (Dalpe Decl. ¶8.) Based on the timing of when the Truist accounts were opened, Ms. Dalpe was working remotely in Wake County at the time she set up the accounts. (*Id.*)[3]

14. Although each of the Debtors also scheduled interests in intercompany accounts receivable and pre-paid expenses, and in the case of Debtor American Efficient, interests in other affiliated entities, these assets were scheduled at their book value. (Dalpe Decl. ¶9.) In reality, the receivables have no value unless Affirmed recovers its deposit from PJM, and the interests in affiliated entities have no fair market or saleable value and thus cannot be considered principal assets of any of these Debtors. In addition, Debtor Affirmed holds its bankruptcy-created preference and post-petition transfer claims against PJM, which it filed in this Court.

## III. The Threatened FERC Litigation.

15. On April 15, 2026, FERC assessed a civil penalty of $722 million and directed Affirmed and its affiliates to disgorge $410 million of purportedly unjust profits (the "**Penalty Order**"). Section 31(d)(1) of the Federal Power Act entitles the entity that is the subject of an enforcement matter to elect in writing for an adjudication of any civil penalty through a de novo action in federal district court. Affirmed and its affiliates made such an election. As a result, Affirmed and its affiliates may lawfully decline to pay any civil penalty assessed by FERC unless and until FERC obtains a court judgment requiring the entities to pay a civil penalty. *See FCC v. AT&T, Inc.*, 146 S. Ct. 1418 (2026).

[3] During the 341 meeting, Ms. Dalpe stated that she likely opened the Truist accounts in the leased Durham, North Carolina non-debtor affiliate office space. After reviewing the dates of the account opening, Ms. Dalpe confirmed that she opened the accounts from her home office. (*Id.*)

16. As of the date of this Response, FERC has not commenced any action in any federal district court to enforce the Penalty Order. FERC has taken the position that it can file its complaint in any federal court in the United States and that it is not subject to the automatic stay in doing so.

17. Nonetheless, FERC takes the position that the Middle District of North Carolina is the appropriate venue because two of the Debtors have filed other litigation against FERC in that district. *See American Efficient, et al. v. FERC, et al.*, Case No. 25-00068 (M.D.N.C.). Specifically, in January 2025, American Efficient LLC and Affirmed filed a lawsuit in the United States District Court for the Middle District of North Carolina in which they alleged that an Order to Show Cause that FERC had issued in December 2024, violated the United States Constitution, basing their allegations upon the recent Supreme Court decision *Jarkesy v. SEC*, 144 S. Ct. 2117 (2024). The North Carolina lawsuit did not address or even raise the merits of American Efficient's business or the FERC enforcement matter against it; instead, it raised a Seventh Amendment challenge to FERC's adjudication of legal claims through an in-house administrative process and imposition of a civil monetary penalty. The Debtors' argument in that case was the same argument that numerous other companies facing regulatory action made in the wake of *Jarkesy*, which ultimately led to the Supreme Court's decision in *FCC v. AT&T, Inc.*, 146 S. Ct. 1418 (2026). As a result of the Supreme Court's ruling in *AT&T,* the relief sought in the North Carolina lawsuit is now moot as it is now clear that absent a federal court judgment, FERC's Penalty Order is unenforceable and the findings FERC makes in the Penalty Order are simply FERC's allegations against the Debtors and entitled to no weight unless and until FERC proves those allegations in a federal court. *Id*.

## IV. The Chapter 11 Cases.

18. The Debtors each filed their chapter 11 petitions in this District on July 18, 2026 (the "**Petition Date**"). Each of the Debtors' chapter 11 petitions list their mailing address in

Durham, North Carolina for the leased office space of the non-debtor affiliates as the "principal place of business."

19. The Debtors filed their chapter 11 cases in accordance with a Transaction Support Agreement among several parties, including Modern Energy, MIH LLC, the Debtors' debtor-in-possession financing lender, and EIG Management Company, LLC ("**EIG**"). *See* Dkt. 35. EIG is a secured lender to MIH LLC, and it is its cash collateral that is being used to fund these cases. The Transaction Support Agreement provided that the Debtors would file their chapter 11 cases in this District.

20. In the nearly three months since the Petition Date, this Court has presided over four hearings, granted first day relief, entered three interim financing orders, heard testimony of the Debtors' witnesses, and ruled on other significant matters, including a motion to appoint a trustee and the Debtors' motion for sanctions. The Bankruptcy Administrator has conducted two 341 meetings.

21. PJM has appeared through counsel since early August 2026. [Dkt. 59.]

22. At the August 21, 2026 hearing before this Court, in response to a question from this Court, Debtors' counsel set forth the basis for venue in this District.

23. On October 15, 2026, the eighty-ninth day of the cases, and nearly two months after the Debtors presented their basis for venue to this Court, the BA filed the BA Motion, acknowledging that venue "has been a topic of discussion since the initial days of the case." (BA Motion, ¶31.) PJM filed the PJM Response two weeks later, on October 29, 2026.

24. Before the BA filed the BA Motion, Debtors' counsel discussed venue with the BA and indicated that while they thought venue was proper in this District, the Debtors would not

oppose a transfer of venue to the District of Delaware. The Debtors never agreed or suggested that there was no proper basis for venue in this District.

**Response**

**I. Venue is Proper in this District.**

25. Section 1408 of title 28 of the United States Code governs venue in chapter 11 cases. 28 U.S.C. § 1408. Section 1408(1) provides that a chapter 11 case may be commenced in any District in which the (1) domicile, (2) residence, (3) principal place of business, or (4) principal assets have been located for the relevant 180-day period. 28 U.S.C. § 1408(1). Section 1408(2) provides that a chapter 11 case may be commenced in any District in which "there is a pending case under title 11 concerning such person's affiliate, general partner, or partnership." 28 U.S.C. § 1408(2). Any one of the criteria in Section 1408(1) or 1408(2) can provide a basis for venue: "The statute is written in the disjunctive. It is deliberately broad." *In re Multi-Color Corp. et al.*, Case No. 26-10910, 2026 WL 735405 at *2 (Bankr. D.N.J. Mar. 16, 2026).

26. "A debtor's choice of forum is presumed to be 'a proper district for venue purposes and the party challenging a debtor's choice must show by a preponderance of the evidence that the venue is improper.'" *In re Grayson O Co.*, 2023 WL 4876240 at *3, quoting *In re Mid Atl. Retail Grp., Inc.*, 2008 WL 612287 at *2. Here, as the Debtors' counsel explained at the August 21, 2026 hearing before this Court, venue is appropriate in this District because each of the Debtors' bank accounts is located in this District, and those bank accounts are principal assets of the Debtors. Thus, it is not enough for the BA and PJM to demonstrate that venue for the Debtors' cases would be proper in districts other than this District. Rather, to prevail on their argument that venue is not proper in this District, the BA and PJM must prove, by a preponderance of the evidence, that the Debtors' principal assets are *not* in this District and that there are no other bases for venue. They cannot carry this burden.

**A. Venue is Proper Because Each Of the Debtors' Principal Assets Is Located in This District.**

27. The principal-assets inquiry has two steps: identify the debtor's principal assets, then determine where they were located for the longer part of the 180 days before filing. *See In re Multi-Color Corp.*, 2026 WL 735405 at *7. As a court within this Circuit has explained, because a debtor may have principal assets in many districts, venue under the "principal assets" criterion of 28 U.S.C. § 1408(1) is not exclusive to a single district:

> The court does not believe that the statute requires that assets be concentrated in one district for principal assets to be located in that district. Instead, the court believes that a debtor's principal assets can be located in several different districts because "[t]he venue statute does not require that only *the* principal asset may support venue; rather, venue may be proper in a district where principal assets are located. Thus, a debtor may have more than one appropriate venue based upon more than one principal asset." *In re Ross*, 312 B.R. 879, 889 (Bankr. W.D. Tenn. 2004) (emphasis in original). Therefore, in order to determine whether the Middle District of North Carolina is a proper venue, the court must determine if principal assets of the Debtor were located in this district during the relevant time period.

*In re Mid Atl. Retail Grp., Inc.*, 2008 WL 612287 at *3.

28. Thus, the question before this Court is not whether there are assets in other districts; instead, it is whether each of the Debtors had a principal asset in this District during the 180-day period preceding the Petition Date. The answer is yes. Each of the Debtors maintained their only bank account or accounts at Truist Bank in Charlotte, North Carolina. The Debtors' Truist accounts were in existence years before the Debtors' Petition Date. These accounts hold the Debtors' cash, and all of the Debtors' disbursements and receipts flow through these accounts.

29. As the court held in *In re Multi-Color Corp.*, a debtor's deposit accounts can constitute "principal assets" and the location of a debtor's bank and "practical relationship" between the debtor and the bank are relevant to determining the location of those assets for assessing venue. 2026 WL 735405, at *6-7. In *Multi-Color*, the court reached this holding even

though the debtors' bank accounts were opened only days before the cases were filed, and even though the debtors owned other intangible assets. *Id.* at *7-13. Here, that practical relationship places the Debtors' bank accounts in this District. All the Debtors' financial accounts are held with Truist, which is headquartered in Charlotte. These accounts were opened years before these cases were filed and are used in the ordinary course of business to pay administrative costs, debt service, and other expenses. Because Truist's operations and the Debtors' day-to-day financial transactions all occur through the Truist bank accounts in Charlotte, the bank accounts are properly located in the Western District of North Carolina for venue purposes.

30. The Bankruptcy Administrator relies on *In re Montes*, No. 23-30394, Dkt. 43 (Bankr. W.D.N.C. Aug. 2, 2023) and *In re Ross*, 312 B.R. at 888-89 to dispute that the location of a bank's headquarters at which a debtor maintains deposit accounts can establish venue. (BA Motion, ¶14.) But neither of those cases holds that the location of a bank at which a debtor banks cannot serve as venue, and both are distinguishable on their facts. In *Montes*, an individual debtor residing in Mexico asserted that because he had a Bank of America checking account, and Bank of America is headquartered in Charlotte, venue was proper in this District. In analyzing the facts, the court found, among other things, that there was no evidence that deposits were made into the debtor's account in North Carolina, and also that the debtor had physical assets in Mexico and a pending lawsuit in Texas. *In re Montes*, No. 23-30394, Dkt. 43 at ¶¶5-6. Similarly, in *Ross*, the individual debtor lived out of state and had physical assets in his home state. 312 B.R. at 888. The court clarified that its holding was based on the specific facts of the debtor's case: "[t]his Court does not need to rule upon whether a bank account may ever be a debtor's principal asset, but in the cases at hand, such a finding can't be made." *Id.*

31. FERC states without any evidentiary support that the Debtors' Truist accounts are "maintained" in the Eastern District. (FERC Statement, ¶7.) But that is not the case. While it is correct that Ms. Dalpe opened the Truist accounts while working remotely in the Eastern District, Ms. Dalpe's testimony and the wire instructions attached to her Declaration show that deposits to the Debtors' Truist accounts were made through Truist's Charlotte location.

32. The Bankruptcy Administrator and PJM also make the point that the Truist balances are small. (PJM Response, ¶8; BA Motion, ¶15.) But as the court instructed in *Multi-Color*, "dollar signs, alone, do not carry the day"—rather the inquiry should be focused on the "'*importance* of the assets in question.'" *In re Multi-Color*, 2026 WL 735405 at *9, quoting *In re Houghton Mifflin Harcourt Publ'g Co.*, 474 B.R. 122, 136 (Bankr. S.D.N.Y. 2012) (emphasis in original). As Ms. Dalpe has testified, the Debtors' Truist accounts are their only bank accounts, they are essential to the Debtors' businesses, and the Debtors could not function without them. (Dalpe Decl. ¶7.) In short, the Truist accounts are the Debtors' principal assets.

33. The Bankruptcy Administrator and PJM also argue that the location of the Truist accounts does not support venue because the Debtors have other "principal assets," including American Efficient's membership interest in Wylan and other entities, Affirmed's claim against PJM, and the accounts receivable for American Efficient Origination and Midcontinent. (BA Motion, ¶¶15, 22; PJM Response, ¶10.) None of these other "assets" are as essential to the Debtors' ability to function as their Truist Bank accounts. Indeed, other than Affirmed's claim for the more than $135 million that PJM is wrongfully holding—which claim is based in part on causes of action that arose only upon the filing of the Affirmed petition—these "assets" are of little to no value to the Debtors. But even if these other assets could constitute "principal assets," and the Debtors do not concede that they do, that does not mean that the Debtors' bank accounts are not

also principal assets. *See In re Mid Atl. Retail Grp.*, 2008 WL 612287 at *3; *In re Ross*, 312 B.R. at 889. Because the Debtors' bank accounts are a principal asset of each Debtor, venue is proper in this District even if the Debtors have principal assets elsewhere.

### B. Venue Also Lies Under Section 1408(2) for the Affiliated Debtors.

34. 28 U.S.C. § 1408(2) permits a case to be commenced in the district "in which there is pending a case under title 11 concerning such person's affiliate." 28 U.S.C. § 1408(2). Because Debtors American Efficient, American Efficient Origination, and Midcontinent have no meaningful "principal assets" other than their Charlotte Truist bank accounts, even if this Court were to find that Affirmed's claim for the funds at PJM was its primary principal asset, venue would still be proper in this District because Affirmed's affiliates have pending cases in this District. Indeed, as long as venue is proper for one of the Debtors, venue in this District is appropriate for all of the Debtors under 28 U.S.C. § 1408(2).

## II. This Court Should Not Dismiss the Chapter 11 Cases on Venue Grounds or Otherwise.

35. This Court should reject PJM's improper and self-serving invitation to dismiss the chapter 11 cases in connection with the hearing on the BA Motion.

36. ***First***, section 1406(a) is applicable only where a case is filed in an improper venue. Because venue is proper in this District, PJM's request fails at the threshold.

37. ***Second***, even if venue were improper in this District (it is not), dismissal would be the wrong remedy. Section 1406(a) permits transfer in the interest of justice. PJM cites *In re McCall*, 194 B.R. 590, 593–94 (Bankr. W.D. Tenn. 1996), and *In re Blagg*, 223 B.R. 795, 803–04 (B.A.P. 10th Cir. 1998), for dismissal to restore a "level playing field" or let a case "start over." (PJM Response, ¶14.) But PJM identifies no creditor kept out of these cases, no advantage the Debtors gained from this forum, and no party prejudiced by it. As the Bankruptcy Administrator

astutely points out, the only entity that would benefit from dismissal is PJM: "PJM is both the party requesting dismissal and the defendant in the pending adversary proceeding [seeking recovery of a preference, among other claims]. PJM therefore has a direct economic interest in the choice between dismissal and transfer that is not necessarily aligned with the interests of the estates and creditors generally." (BA Reply, ¶7.)

38. ***Third*,** Bankruptcy Rule 1014(a)(2) permits dismissal or transfer on the "timely motion of a party in interest" or on the Court's own motion. PJM asks for dismissal in a response, not a motion, and the Bankruptcy Administrator, not PJM, is the movant. Accordingly, PJM should not be allowed to bootstrap its self-serving request for a dismissal (that would destroy Debtor Affirmed's preference and post-petition transfer claims) onto the BA Motion.

39. The Debtors vigorously dispute PJM's separate, standalone motion to dismiss, and reserve all arguments with respect to that motion.

### III. The Court Should Maintain the Chapter 11 Cases or Transfer them to the District in which the Debtors are Domiciled.

40. 28 U.S.C. § 1412 provides: "A district court may transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties." As this Court instructed, in evaluating a motion to transfer venue under 28 U.S.C. § 1412: "[w]here, as here, the venue of a Chapter 11 case is valid, the 'debtor's [] choice of forum [is to] be accorded substantial weight and deference." *In re Bestwall*, 605 B.R. at 51, quoting *In re PWS Holding Corp*., Nos. 98-212 through 98-223, 1998 Bankr. LEXIS 549, at *4–5 (Bankr. D. Del. Apr. 28, 1998). For this reason, "'[w]here the existing venue is entirely appropriate, this Court exercises its power to transfer cases cautiously.'" *Id.*, quoting *In re Land Stewards, L.C.*, 293 B.R. 364, 369 (Bankr. E.D. Va. 2002). The party seeking to transfer venue must prove by a preponderance of the evidence that venue should be transferred. *Id.*

41. Here, both the "interest of justice" and the "convenience of the parties" weigh in favor of maintaining the chapter 11 cases in this District. But if the Court decides to transfer the cases, the Debtors submit that the district in which they are domiciled, the District of Delaware, is the most appropriate alternative venue.

**A. The "Interest of Justice" Weighs in Favor of Maintaining the Chapter 11 Cases in this District.**

42. "The interests of justice standard 'is applied based on the facts and circumstances of each case.'" *In re Bestwall*, 605 B.R. at 51, quoting *In re Enron Corp.*, 284 B.R. 376, 403 (Bankr. S.D.N.Y. 2002). In evaluating the "interest of justice," courts consider a variety of factors, including: "(1) whether transfer promotes the economic and efficient administration of the bankruptcy estate; (2) whether transfer facilitates judicial economy; (3) the parties' ability to receive a fair trial in either venue; (4) whether either forum has an interest in deciding controversies within its jurisdictional borders; (5) whether transfer would affect the enforceability of any judgment rendered; and (6) whether the debtor's original choice of forum should be disturbed." *Id.* "Ultimately, the key consideration is 'whether transferring venue would promote the efficient administration of the bankruptcy estate, judicial economy, timeliness, and fairness.'" *Id.*, quoting *In re Manville Forest Prods. Corp.*, 896 F.2d 1384, 1391 (2d Cir. 1990). Here, these factors weigh in favor of maintaining the chapter 11 cases in this District.

43. ***Economic and efficient administration***. The Bankruptcy Administrator concedes that transfer may be "a cumbersome disruption of the chapter 11 process" and that a transferee court "will need time to get up to speed." (BA Motion, ¶31.) This disruption is concrete. The Debtors have been before this Court for three months. The Court is familiar with the issues, has heard testimony from the Debtors' witnesses, and has ruled on key motions. A transferee court would have to be brought up to speed on that record, and the Debtors would have to re-establish

the financing and other relief now in place, before a new judge and under new local procedures, all at the expense of very limited estate resources. PJM should appreciate that cost. It argues at length that the estates are spending borrowed funds on professional fees and that those losses are "diminishing the estates." (PJM Response, ¶¶18–22.) Time is of the essence in these chapter 11 cases—the Debtors need to move forward swiftly in the pending adversary proceeding. Transfer will disrupt these efforts.

44. ***Judicial economy.*** The Bankruptcy Administrator's principal judicial-economy argument hinges on a prepetition lawsuit that is stayed and a lawsuit that does not exist. She states that FERC "intends" to file an enforcement action in the Middle District "to benefit from Judge Schroeder's prior experience with these parties and the facts," and she assumes that certain portions of that action could be referred to the bankruptcy court, or that the reference might be withdrawn. (BA Motion, ¶28; *see id.* ¶¶6, 33.) FERC similarly states that it "expects" to file a lawsuit in the Middle District. (FERC Statement, ¶2.) The Bankruptcy Administrator and FERC overstate the point. *First*, the Debtors' proceeding in front of the Middle District is currently stayed. Prior to the stay, Judge Schroeder conducted a single hearing and ruled on a single substantive motion that had nothing to do with the merits of FERC's claims against the Debtors and instead addressed a question of constitutional law that the Supreme Court has since resolved in its *AT&T* decision. *See American Efficient, et al. v. FERC, et al.*, Case No. 25-00068 (M.D.N.C.). *Second*, FERC's expectation to file a lawsuit in the Middle District at some point in the future is just that—an expectation. There is no pending lawsuit, and as FERC has represented to the parties, it can file the lawsuit in any district court of its choosing.

45. In contrast, the proceedings that are actually pending are here, before this Court, including the Debtors' chapter 11 cases and the adversary proceeding in which Affirmed seeks to

recover preferential and improper post-petition transfers to PJM, *Affirmed Energy LLC v. PJM Interconnection, L.L.C., et al.*, Adv. Pro. No. 26-03055. This Court has heard extensive testimony from the Debtors, conducted multiple hearings, and ruled on substantive motions. Transferring the cases outside of this District would frustrate judicial economy, not advance it. *See, e.g., In re AnthymTV Co.*, 650 B.R. 261, 283 (Bankr. D.S.C. 2023) (holding that transferring venue from the originally filed district would not advance judicial economy because the Court has "received several hours of testimony regarding the historical business operations of the Debtor and reviewed numerous exhibits relating to Debtor's operations."); *In re Rest. Acquisition I, LLC*, 2016 WL 855089 at *5 (Bankr. D. Del. 2016) (holding that venue should not be transferred where the "Court has spent a significant amount of time familiarizing itself with the Debtor's business and has granted numerous requests for relief in connection with these proceedings.").

46. ***Fairness***. The Bankruptcy Administrator argues that what she believes will be FERC's forum preference for its yet-to-be-filed lawsuit means that a transfer to the Middle District is in the interest of justice. Not so. The interest-of-justice inquiry looks to the interests of the bankruptcy estates, not to an adverse party's preferred courtroom, and courts decline to move a case merely so that one party can exchange one perceived home-field advantage for another's. *See In re Patriot Coal Corp.*, 482 B.R. 718, 749–51 (Bankr. S.D.N.Y. 2012).

47. ***The Debtors' choice of forum.*** The Bankruptcy Administrator argues that the weight given to a debtor's choice diminishes when it is "not directly related to the operative, underlying facts of the case." (BA Motion, ¶21 (quoting *In re Grand Dakota Partners, LLC*, 573 B.R. 197, 203 (Bankr. W.D.N.C. 2017)).) The "operative facts" in these cases are disputes arising from PJM's wrongful retention of the Debtors' cash and FERC regulatory proceedings that the Debtors are actively challenging. No district in North Carolina is closer to those facts than another.

The Debtors' cash is held in this District, the adversary proceeding against PJM is pending in this Court, and, as set forth below and as the Bankruptcy Administrator concedes, Charlotte is a convenient forum particularly for out-of-state parties and counsel. (BA Motion, ¶26.)

48. ***Timeliness and fairness.*** Timeliness is among the considerations at the core of the inquiry. *Bestwall*, 605 B.R. at 51 (quoting *Manville*, 896 F.2d at 1391). The Debtors explained the basis for venue to the Court at the August 21, 2026 hearing, at the Court's request. (*Supra* ¶¶22, 26.) The Bankruptcy Administrator did not move until October 15, the eighty-ninth day of the cases and nearly two months later, although she acknowledges that venue "has been a topic of discussion since the initial days of the case." (BA Motion, ¶31.) PJM, which has been active in these cases since they began, waited until October 29, not to challenge venue, but to instead argue that because the BA brought her Motion, this Court should dismiss these cases and thereby (not coincidentally) eliminate Debtor Affirmed's preference and post-petition transfer claims against PJM. It would be unfair to other creditors to credit PJM's self-interested arguments particularly given their untimeliness.

**B. The "Convenience of the Parties" Weighs in Favor of Maintaining the Chapter 11 Cases in this District.**

49. The "convenience of the parties" also weighs in favor of maintaining the chapter 11 cases in this District. Courts evaluate six factors in determining convenience of the parties: (1) the proximity of creditors of every kind to the court; (2) the proximity of the debtor to the court; (3) the proximity of the witnesses necessary to the administration of the estate; (4) the location of the assets; (5) the economic administration of the estate; and (6) the necessity for ancillary administration if a liquidation should occur. *In re Bestwall*, 605 B.R. at 53.

50. ***Proximity of the creditors***. As the Bankruptcy Administrator conceded, the creditors in these cases lack "geographic concentration." (BA Motion, ¶23.) FERC and PJM are in

Washington, D.C. and Pennsylvania, respectively, and each is represented by counsel outside of North Carolina. Most other creditors are law firms not expected to participate regularly and located outside of North Carolina. (*Id.*) EIG is a party-in-interest domiciled in Delaware and represented by out-of-state counsel.

51. ***Proximity of the witnesses***. The Debtors' primary witness to date, Ms. Dalpe, resides in the Eastern District of North Carolina. While her travel time to Charlotte is longer than to Winston-Salem or Greensboro, she travels by car and it is a modest additional drive: 1 hour and 30 minutes to Winston-Salem or Greensboro and 2 hours and 40 minutes to Charlotte. (Dalpe Decl. ¶5.) The same is true for Mr. Benjamin Abram. As to other witnesses, the Bankruptcy Administrator concedes: "[o]ther witnesses will likely travel from out of town" and Charlotte has more frequent direct flights. (BA Motion, ¶¶25–26.)

52. ***Location of the assets***. The Bankruptcy Administrator concedes that the Debtors have no physical assets and that location deserves "limited weight." (BA Motion, ¶22.) The proximity of the Debtors themselves carries little weight when, as the Debtors have shown, they have no physical office or employees. (¶9 above.)

53. ***Economic administration of the estates***. As set forth above in paragraphs 43-45, given that the cases have been pending before this Court for three months, this Court's familiarity with the Debtors and the key issues weighs in favor of maintaining the cases in this District and before this Court.

### C. If the Court Transfers the Cases, it Should Transfer them to the District where the Debtors are Domiciled.

54. Every Debtor is organized as a Delaware limited liability company. The Debtors' lender and affiliate is a Delaware limited liability company. The Bankruptcy Administrator states that venue "would be proper in the District of Delaware, where the Debtors are domiciled." (BA

Motion, ¶17.) FERC agrees: "the District of Delaware, where the Debtors are domiciled, would also be a proper venue …" (FERC Statement, ¶1, n.2.)

55. The Debtors selected this District as their venue, in part, because of the convenience of Charlotte for key parties and the Debtors' out-of-state counsel. Like Charlotte, Delaware is a convenient forum, with multiple direct flights to Philadelphia and train options for parties on the East Coast. And while it is correct that the Debtors' mailing address is in Durham and Mr. Abram and Ms. Dalpe are both residents of North Carolina, the Debtors do not have any tangible assets in North Carolina, and the most significant dispute in the case—the Debtors' adversary proceeding against PJM—raises primarily bankruptcy-specific legal issues, not factual issues. The Debtors do not anticipate that Mr. Abram or Ms. Dalpe would have extensive travel to Delaware if the cases were transferred, nor would there be a basis for any district court to withdraw the reference for the adversary proceeding. Last, the fact that FERC may in the future file a lawsuit in the Middle District of North Carolina (if a bankruptcy court holds that the police powers exception to the automatic stay applies, and for the record, the Debtors dispute that it does), is irrelevant to where these cases are transferred now. FERC has stated that it can file its complaint in any district in the United States, and it can determine, to the extent that the stay is lifted, where it chooses to file its suit.

56. The Debtors' choice of venue is entitled to "substantial weight and deference." *In re Bestwall*, 605 B.R. at 51. Again, the Debtors' first preference is that these cases remain in this District. But if the Court is inclined to transfer them, then the Debtors respectfully request that they be transferred to the District of Delaware.

**<u>Reservation of Rights</u>**

57. The Debtors reserve the right to supplement this Response with additional declarations and testimony, to request an evidentiary hearing, to respond separately to PJM's motion to dismiss, and to raise additional arguments at or before the hearing.

[Remainder of Page Intentionally Blank]

## Conclusion

WHEREFORE, the Debtors respectfully request that the Court (i) hold that venue is proper in this District under 28 U.S.C. § 1408; (ii) deny the BA Motion's request for transfer; (iii) deny PJM's request for dismissal; (iv) alternatively, and only if the Court concludes that these cases should be moved, transfer them and Adv. Pro. No. 26-03055 to the United States Bankruptcy Court for the District of Delaware; and (v) grant such other and further relief as is just and proper.

Respectfully submitted, this 10th day of November, 2026.

**WALDREP WALL BABCOCK & BAILEY PLLC**

*/s/ Jennifer B. Lyday*
Thomas W. Waldrep, Jr. (N.C. Bar No. 11135)
Jennifer B. Lyday (N.C. Bar No. 39871)
370 Knollwood Street, Suite 600
Winston-Salem, NC 27103
Telephone: 336-717-1283
Email: notice@waldrepwall.com

-and-

**JENNER & BLOCK LLP**

Catherine L. Steege (admitted *pro hac vice*)
Melissa M. Root (admitted *pro hac vice*)
353 N. Clark Street
Chicago, Illinois 60654
Telephone: (312) 222-9350
Email: csteege@jenner.com
mroot@jenner.com

*Counsel for the Debtors*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 10, 2026, I caused the foregoing to be served on all parties entitled to notice by filing same with the Court's CM/ECF system, which will send notification of such filing to all parties registered to receive electronic notices in this case.

*/s/ Jennifer B. Lyday*
Jennifer B. Lyday

**Exhibit A**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION**

| | |
|---|---|
| IN RE: | Case No. 26-30968 |
| AMERICAN EFFICIENT LLC, *et al.*,[1] | Chapter 11 |
| Debtors. | (Jointly Administered) |

**DECLARATION OF TAYLER L. DALPE IN SUPPORT OF DEBTORS' RESPONSE TO MOTION OF BANKRUPTCY ADMINISTRATOR TO TRANSFER VENUE OF BANKRUPTCY CASES**

I, Tayler L. Dalpe, declare under penalty of perjury that the following is true and correct to the best of my knowledge, information, and belief:

1. I am the Chief Accounting Officer of Modern Energy Group LLC ("**Modern Energy**" or "**MEG"**), which, together with certain intermediate holding companies, indirectly owns the above-captioned debtors and debtors-in-possession, American Efficient LLC ("**American Efficient**"), American Efficient Origination LLC ("**American Efficient Origination**"), Affirmed Energy LLC ("**Affirmed**"), and Midcontinent Energy LLC ("**Midcontinent Energy**") (collectively, the "**Debtors**"). In that role, I oversee Modern Energy's accounting, financial reporting, treasury, and cash-management functions, including the day-to-day accounting and finances of the Debtors and their affiliated holding companies.

2. I am familiar with the Debtors' day-to-day business operations, financial affairs, corporate and capital structure, insurance programs, banking arrangements, and financing needs. I have first-hand knowledge of the matters described in this Declaration and, except where otherwise

[1] The Debtors in these cases, along with each Debtor's case number, are: (i) American Efficient LLC, Case No. 26-30968; (ii) Affirmed Energy LLC, Case No. 26-30969; (iii) American Efficient Origination LLC, Case No. 26-30970; and (iv) Midcontinent Energy LLC, Case No. 26-30971.

noted, my statements are based on (a) my personal knowledge, (b) my review of the Debtors' business records, financial statements, and books and accounts, and (c) my experience in, and knowledge gained through, my role at Modern Energy.

3. Each Debtor is a Delaware limited liability company, and the Debtors are affiliated entities.

4. The Debtors do not currently have any employees. The day-to-day work is done by employees of non-debtor affiliates who work remotely from various locations, including the Eastern District of North Carolina, the Western District of North Carolina, and the Middle District of North Carolina. The Debtors maintain a business address at an office space in Durham, North Carolina that is leased by a non-debtor affiliate. The Debtors are not parties to that lease.

5. I reside in Fuquay-Varina, in Wake County, North Carolina. I perform my duties and responsibilities remotely, from my home office. I began working remotely during the COVID pandemic and never returned to regular in person work. I estimate that I have been in the physical office space in Durham, North Carolina, less than 10 times in the past year. My travel time by car to Charlotte, North Carolina is approximately 2 hours and 40 minutes. My travel time by car to Winston-Salem or Greensboro is approximately 1 hour and 30 minutes.

6. Each of the Debtors maintain bank accounts with Truist, a bank headquartered in Charlotte, North Carolina. The Truist accounts include operating cash accounts and interest-bearing money market accounts. A chart with the Truist account details for each Debtor, the date the account was opened, and the balance as of the Petition Date is below:

| Debtor | Account Type | Date Opened | Last Four Digits | Balance |
|---|---|---|---|---|
| American Efficient LLC | Money Market | 10/23/24 | 1133 | $12,162.69 |
| American Efficient LLC | Checking | 09/25/23 | 6437 | $40,179.05 |
| American Efficient LLC | Checking | 06/13/24 | 8666 | $100.00 |

| Debtor | Account Type | Date Opened | Last Four Digits | Balance |
|---|---|---|---|---|
| | | | | |
| Affirmed Energy LLC | Money Market | 09/25/23 | 6542 | $1,959.00 |
| Affirmed Energy LLC | Checking | 09/25/23 | 6534 | $21,444.00 |
| American Efficient Origination LLC | Checking | 09/25/23 | 6453 | $11,553.00 |
| Midcontinent Energy LLC | Checking | 09/25/23 | 6127 | $52.00 |

7. The Truist accounts are the Debtors' only bank accounts. All of the Debtors' receipts and disbursements flow through the Truist accounts. The Truist accounts are essential to the Debtors' businesses. The Debtors could not function without the Truist accounts. True and correct copies of the wire instructions are attached as Exhibit 1. The account information for Truist on each of the wire instructions provides the following address: 214 N. Tryon St., Charlotte, NC 28202.

8. I opened the Debtors' Truist accounts while working remotely in 2023 and 2024. During the 341 meeting, I stated that I likely opened the accounts while working from the leased office space in Durham, North Carolina. However, after reviewing the dates on which the accounts were opened, I determined I would have already been working remotely from my home office in Wake County at that time.

9. I worked with the Debtors' counsel to prepare the Debtors' Schedules and Statements of Financial Affairs. Although each of the Debtors also scheduled interests in inter-company accounts receivable and pre-paid expenses, and in the case of debtor American Efficient, interests in other affiliated entities, these assets were scheduled at their book value. The company accounts receivable have no realizable value value unless Affirmed receives its deposit back from

PJM, and to the best of my knowledge, Debtor American Efficient's interest in its affiliated entities has no saleable value.

I declare, pursuant to 28 U.S.C. § 1746, under penalty of perjury under the laws of the United States of America, that the foregoing is true and correct to the best of my knowledge, information, and belief.

Date: November 10, 2026



Tayler L. Dalpe

# EXHIBIT 1

# Wire Instructions

## Domestic Wire Transfers

- Bank Name: Truist Financial
- Bank Address: 214 N Tryon St., Charlotte, NC 28202
- ABA#: [redacted]
- Recipient Name: AMERICAN EFFICIENT LLC
- Recipient Address: 703 Foster Street Durham NC 27701
- Account Number: [redacted]1133

## International Wire Transfers

- Bank Name: Truist Financial
- Bank Address: 214 N Tryon St., Charlotte, NC 28202
- SWIFT#: [redacted]
- Recipient Name: AMERICAN EFFICIENT LLC
- Recipient Address: 703 Foster Street Durham NC 27701
- Account Number: [redacted]1133

## CHIPS ID: 0160

TRUIST

© 2020 Truist Financial Corporation. Truist, the Truist logo and Truist Purple are service marks of Truist Financial Corporation.

# Wire Instructions

## Domestic Wire Transfers

- Bank Name: Truist Financial
- Bank Address: 214 N Tryon St., Charlotte, NC 28202
- ABA#: [redacted]
- Recipient Name: AMERICAN EFFICIENT LLC
- Recipient Address: 703 Foster Street Durham NC 27701
- Account Number: [redacted]6437

---

## International Wire Transfers

- Bank Name: Truist Financial
- Bank Address: 214 N Tryon St., Charlotte, NC 28202
- SWIFT#: [redacted]
- Recipient Name: AMERICAN EFFICIENT LLC
- Recipient Address: 703 Foster Street Durham NC 27701
- Account Number: [redacted]6437

## CHIPS ID: 0160

TRUIST

© 2020 Truist Financial Corporation. Truist, the Truist logo and Truist Purple are service marks of Truist Financial Corporation.

# Wire Instructions

## Domestic Wire Transfers

- Bank Name: Truist Financial
- Bank Address: 214 N Tryon St., Charlotte, NC 28202
- ABA#: [redacted]
- Recipient Name: AMERICAN EFFICIENT LLC
- Recipient Address: 703 Foster Street Durham NC 27701
- Account Number: [redacted]8666

---

## International Wire Transfers

- Bank Name: Truist Financial
- Bank Address: 214 N Tryon St., Charlotte, NC 28202
- SWIFT#: [redacted]
- Recipient Name: AMERICAN EFFICIENT LLC
- Recipient Address: 703 Foster Street Durham NC 27701
- Account Number: [redacted]8666

## CHIPS ID: 0160

TRUIST

© 2020 Truist Financial Corporation. Truist, the Truist logo and Truist Purple are service marks of Truist Financial Corporation.

# Wire Instructions

## Domestic Wire Transfers

- Bank Name: Truist Financial
- Bank Address: 214 N Tryon St., Charlotte, NC 28202
- ABA#: [redacted]
- Recipient Name: AFFIRMED ENERGY LLC
- Recipient Address: 703 Foster Street Durham NC 27701
- Account Number: [redacted]6542

## International Wire Transfers

- Bank Name: Truist Financial
- Bank Address: 214 N Tryon St., Charlotte, NC 28202
- SWIFT#: [redacted]
- Recipient Name: AFFIRMED ENERGY LLC
- Recipient Address: 703 Foster Street Durham NC 27701
- Account Number: [redacted]6542

## CHIPS ID: 0160

TRUIST

© 2020 Truist Financial Corporation. Truist, the Truist logo and Truist Purple are service marks of Truist Financial Corporation.

# Wire Instructions

## Domestic Wire Transfers

- Bank Name: Truist Financial
- Bank Address: 214 N Tryon St., Charlotte, NC 28202
- ABA#: [redacted]
- Recipient Name: AMERICAN EFFICIENT ORIGINATION LLC
- Recipient Address: 703 Foster Street Durham NC 27701
- Account Number: [redacted]6453

---

## International Wire Transfers

- Bank Name: Truist Financial
- Bank Address: 214 N Tryon St., Charlotte, NC 28202
- SWIFT#: [redacted]
- Recipient Name: AMERICAN EFFICIENT ORIGINATION LLC
- Recipient Address: 703 Foster Street Durham NC 27701
- Account Number: [redacted]6453

## CHIPS ID: 0160

TRUIST

© 2020 Truist Financial Corporation. Truist, the Truist logo and Truist Purple are service marks of Truist Financial Corporation.

# Wire Instructions

## Domestic Wire Transfers

- Bank Name: Truist Financial
- Bank Address: 214 N Tryon St., Charlotte, NC 28202
- ABA#: [redacted]
- Recipient Name: AFFIRMED ENERGY LLC
- Recipient Address: 703 Foster Street Durham NC 27701
- Account Number: [redacted]6534

---

## International Wire Transfers

- Bank Name: Truist Financial
- Bank Address: 214 N Tryon St., Charlotte, NC 28202
- SWIFT#: [redacted]
- Recipient Name: AFFIRMED ENERGY LLC
- Recipient Address: 703 Foster Street Durham NC 27701
- Account Number: [redacted]6534

**CHIPS ID: 0160**

TRUIST

© 2020 Truist Financial Corporation. Truist, the Truist logo and Truist Purple are service marks of Truist Financial Corporation.

# Wire Instructions

## Domestic Wire Transfers

- Bank Name: Truist Financial
- Bank Address: 214 N Tryon St., Charlotte, NC 28202
- ABA#: [redacted]
- Recipient Name: MIDCONTINENT ENERGY LLC
- Recipient Address: 703 Foster Street Durham NC 27701
- Account Number: [redacted]6127

## International Wire Transfers

- Bank Name: Truist Financial
- Bank Address: 214 N Tryon St., Charlotte, NC 28202
- SWIFT#: [redacted]
- Recipient Name: MIDCONTINENT ENERGY LLC
- Recipient Address: 703 Foster Street Durham NC 27701
- Account Number: [redacted]6127

## CHIPS ID: 0160

TRUIST

© 2020 Truist Financial Corporation. Truist, the Truist logo and Truist Purple are service marks of Truist Financial Corporation.